**Slip Op. 12-115**

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TELEBRANDS CORPORATION,**<br><br>                Plaintiff,<br><br>      v.<br><br>**UNITED STATES,**<br><br>                Defendant. | **Before: Jane A. Restani, Judge**<br><br>Court No. 11-00064 |

## OPINION

[Judgment for Defendant in Customs classification matter.]

Dated: September 6, 2012

      Robert F. Seely, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, NY, for plaintiff. With him on the brief were Robert B. Silverman and Peter W. Klestadt.

      Amy M. Rubin, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With her on the brief were Stuart F. Delery, Acting Assistant Attorney General, and Barbara S. Williams, Attorney-In-Charge. Of counsel on the brief was Chi S. Choy, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

      Restani, Judge: In this action, plaintiff importer Telebrands Corporation ("Telebrands" or "Plaintiff") challenges the U.S. Customs and Border Protection's ("Customs" or "Defendant") classification for tariff purposes of certain pedicure items. After first classifying the importer's merchandise under subheading 8214.20.30, Harmonized Tariff Schedule of the United States ("HTSUS") (2007), Customs reclassified and reliquidated the merchandise under

Court No. 11-00064                                                                                                  Page 2

subheading 8214.90.90, HTSUS, pursuant to its ruling in HQ H063622.  Application for Further Review of Protest No. 2720-09-100197; Classification of PedEgg™ pedicure sets, Cust. HQ Rul. H063622 (Sept. 1, 2010), available at App. to Pl.'s Mot. for Summ. J., Ex. C.  Plaintiff asserts the proper classification is subheading 8214.20.90, HTSUS.  Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Br.") 2.

        The claimed classifications are found under heading 8214, HTSUS.  It reads as follows:

| | |
|---|---|
| 8214 | Other articles of cutlery (for example, hair clippers, butchers' or kitchen cleavers, chopping or mincing knives, paper knives); manicure or pedicure sets and instruments (including nail files); base metal parts thereof: |
| 8214.10.00 |     Paper knives, letter openers, erasing knives, pencil sharpeners (nonmechanical) and blades and other parts thereof |
| 8214.20 |     Manicure or pedicure sets and instruments (including nail files), and parts thereof: |
| 8214.20.30 |         Cuticle or cornknives, cuticle pushers, nail files, nailcleaners, nail nippers and clippers, all the foregoing used for manicure or pedicure purposes, and parts thereof. |
| |         Manicure and pedicure sets, and combinations thereof, in leather cases or other containers of types ordinarily sold therewith in retail sales:[1] |
| 8214.20.60 |             In leather containers |
| 8214.20.90 |             Other[2] |

---

[1] This provision was amended in 2009 to eliminate the phrase, "in leather cases or other containers of types ordinarily sold therewith in retail sales."  Proposed Modifications to the Harmonized Tariff Schedule of the United States Addendum, USITC Pub. No. 3945 at 6, (Aug. 2007) ("USITC Proposed Modification"), available at http://www.usitc.gov/publications/tariff_affairs/pub3945.pdf (last visited July 26, 2012).  That amendment does not apply to the imports before the court.

[2] This item is footnoted to subheading 9902.25.55, HTSUS, which provides for a
                                                                                                    (continued...)

| | | |
|---|---|---|
| 8214.90 | Other: | |
| | | Cleavers and the like not elsewhere specified or included: |
| 8214.90.30 | | Cleavers with their handles |
| 8214.90.60 | | Other |
| 8214.90.90 | | Other (including parts) |

## FACTS

The following are undisputed facts. See generally, Pl.'s Separate Statement of Material Facts Not in Issue ("Pl.'s Facts"), and Def.'s Resp. to Pl.'s Statement of Material Facts as to which There are No Genuine Issues to be Tried ("Def.'s Resp. Statement of Facts").

1. The subject merchandise was entered under entry number 862-0393676-9 dated November 13, 2007. Pl.'s Facts ¶ 4.

2. The subject merchandise was described as follows on commercial invoice number "TEL 12/11/2007," which covered the subject entry:

    • Foot pedicure (white) with two loose emery boards – item #2839;
    • Two foot pecicure [sic; should be "pedicure"] (white) with two loose emery boards each – item #3052;
    • Foot pedicure (black) with 1 pack of 5 emery boards – item #2843;
    • Two foot pedicure (black) with 1 pack of 5 emery boards – item #3058.

Id. ¶ 5.

3. The merchandise consists of two shaped and curved pieces of plastic (top and bottom half) and an interior plastic frame piece fitted into the top half forming a generally egg-shaped object. Id. ¶ 7; Def.'s Resp. Statement of Facts ¶ 7.

4. The merchandise is labeled with the trademark PedEgg™ containing the silhouette of a human foot appearing between the letters "Ped" and "Egg" and is marketed under this trademark in the United States. Pl.'s Facts ¶ 8.

---

[2](...continued)
temporary lower duty rate. No party argues that subheading 9902.25.55, HTSUS, alters the meaning of subheading 8214.20.90, HTSUS.

5.  As advertised for retail sale, the PedEgg™ is described as designed to fit in the hand while in use.  Id. ¶ 9.

6.  A flat stainless steel perforated object is affixed to the inside plastic frame piece that fits into the interior top half of the PedEgg™.  It is described in marketing materials as a "micro-file."  Id. ¶ 10.

7.  The metal object is advertised for retail sale to "gently remove[] calluses and dead skin." Id. ¶ 13.

8.  The metal object's function is to slice away very small, thin pieces of callused skin.  Id. ¶ 14.

9.  As advertised for retail sale, the PedEgg™ is described as "designed to collect all the skin shavings in a convenient storage compartment."  Def.'s Resp. Statement of Facts ¶ 15; Pl.'s Facts ¶ 15.

10. When fitted together, the three plastic pieces of the PedEgg™ enclose the metal object. Pl.'s Facts ¶ 16.

11. The items described on the commercial invoice as emery "boards" consist of flexible emery pads having a self-adhesive backing (hereafter "emery pads").  Id. ¶ 17.

12. The subject emery pads are designed to adhere to the curved outside top surface of the PedEgg™.  Id. ¶ 18.

13. The emery pads have been advertised as "high quality emery buffing pads."  Id. ¶ 19.

14. The emery pad functions by scraping or abrading away very small particles of dry or callused skin.  Id. ¶ 20.

15. As imported, each item consists of the PedEgg™, the emery pads (enclosed together in plastic wrap), and an instruction sheet.  Id. ¶ 21.

16. Each item of subject merchandise was imported in a plain cardboard box.  Id. ¶ 25.

17. Items packaged in plain cardboard boxes are sold directly to the ultimate consumer by mail order from website, newspaper, or television advertisements.  Id. ¶ 27.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction over the denial of a protest pursuant to 28 U.S.C. § 1581(a).  Customs classification decisions are reviewed de novo.  See 28 U.S.C. § 2640(a)(1).  Summary judgment is appropriate when "there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is."  Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1364–65 (Fed. Cir. 1998).

**DISCUSSION**

Cross motions for summary judgment are before the court.  Pl.'s Br. 1; Def.'s Mem. in Support of Cross-Mot. for Summ J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Br.") 1.  There are no disputed issues of material fact.  The questions before the court are whether the imported items are to be classified as other items of cutlery under heading 8214, HTSUS, and, if so, whether they are "pedicure sets" or unitary cutting instruments with added emery pads, not specifically listed in HTSUS heading 8214.  If they are the former, Plaintiff will prevail.  If the latter, Defendant's classification is correct.

The PedEgg™ is a callus remover.  It is imported with one or more emery pads that may be affixed to the PedEgg™ for further smoothing.  Pl.'s Facts ¶¶ 18–21; Def.'s Resp. Statement of Facts ¶¶ 18–21.[3]  The court has before it samples of the imported items in cardboard boxes and samples of the same items in a clam-shell packaging, both types of packaging apparently intended for disposal upon opening.  In the event some of the importations

---

[3] Defendant suggests that the emery pads may be classified separately, as a duty-free item, and their value deducted from that of the PedEgg™ itself.  That issue has not been briefed and separate classification seems inconsistent with the court's conclusion.

Court No. 11-00064                                                                                                    Page 6

at issue were in the latter type of packaging, the court notes that the distinction is unimportant to the resolution of this matter.

Because there seems to be confusion in some of the Court cases about how classification is to proceed in general, the court sets forth the background here. Resolution of classification disputes under the HTSUS is guided by its General Rules of Interpretation ("GRI"). <u>Honda of Am. Mfg. v. United States</u>, 607 F.3d 771, 773 (Fed. Cir. 2010). What is clear from the legislative history of the World Customs Organization ("WCO") and case law is that GRI 1 is paramount. It provides in relevant part, "classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes." GRI 1. GRI 2 references specific issues such as unfinished goods and mixtures, not relevant here, and subsequent GRIs refer to ways of classifying goods which fit into more than one heading. GRI 2–3. The Explanatory Notes to GRI 1 state that "the terms of the headings and any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification" and the GRIs are to be considered in numerical order. WCO, Explanatory Note V(a) to GRI 1, HTS. The headings and relevant notes are to be exhausted before inquiries, such as those of GRI 3, are considered, e.g., specificity or essential character. The HTSUS is designed so that most classification questions can be answered by GRI 1,[4] so that there would be no need to delve into the less precise inquiries presented by GRI 3.[5] Similarly, GRI 6 requires

---

[4] <u>See</u> Edward D. Re, Bernard J. Babb, and Susan M. Koplin, <u>8 West's Fed. Forms, National Courts</u> § 13343 (2d ed. 2012) (gathering cases).

[5] Two provisions proposed at the Harmonized System Committee's 29th Session also indicate that GRI 1 was to be controlling if at all possible. First, Australia proposed to divide
(continued...)

classification among the competing subheadings according to the terms of the subheadings and related notes and in the same way and order as in the previous GRIs. Thus, only after exhausting the terms of the subheadings and related notes would one turn to GRI 3 to choose between two or more potentially applicable subheadings.

There are three hurdles for Plaintiff to overcome in order to have its merchandise classified as a pedicure set under subheading 8214.20.90, HTSUS. First, the merchandise must be classifiable under the heading 8214, HTSUS. The parties do not disagree as a primary matter that the item at issue is an item of cutlery. The small holes in the metal part "slice" bits of skin. In other words, they cut. This is an item of cutlery, not classified previously, such as the specifically listed hair clipper. It is an other item of cutlery under heading 8214, HTSUS. The

---

[5](...continued)
Rule 1 into (a), (b) and (c), where Rule 1(a) would "specify that where General Rule 1 was inapplicable, account should be taken of 'Rules 2, 3, and 4 in numerical sequence' rather than simply of 'the following provisions.'" Customs Co-operation Council, Harmonized System Committee, Summary Record of the 29th Session of the Harmonized System Committee and its Working Party ("Summary Record"), ¶¶ 15–16, Annex V Doc. 29.600E (Jan. 12, 1983). Rule 1 states, "classification shall be determined according to the terms of the headings and any relative Section or Chapter Notes and, provided such headings or Notes do not otherwise require, according to the following provisions." GRI 1 (emphasis added). Members rejected Australia's proposal to change the last clause of Rule 1 because considering the GRI in numerical sequence was already "a question of established practice which posed no legal problems." Summary Record ¶¶ 17–18. Because it was an understood practice, there was no need to overload "legal texts with provisions of marginal importance." Id. ¶ 17.

Second, Austria proposed to add a provision stating that priority for the terms of headings, Sections, and Chapter Notes should not be given "where classification could not be achieved within the framework of those headings and Notes and in cases where goods potentially classifiable in different headings were to be classified in a single heading by application of the following Rules." Summary Record ¶ 8. Austria was worried that the obligation to look at the GRI in order would restrict the scope of Rules 2–6, because "they could only be taken into account if the provisions of Rule 1 did not otherwise require." Id. No other Members supported this provision, id. ¶ 11, and therefore, the practice of considering the GRI in sequence stands.

court now turns to the claimed subheading 8214.20.90, HTSUS.  The two requirements of that subheading are that the item constitute a "set," as opposed to one item or instrument, and finally, the merchandise must be imported in a container normally sold with the set of instruments in retail sales.[6]

The parties do not dispute that the callus remover is for use in a pedicure, i.e., for care of the feet, toes, or toenails.  See Pl.'s Br. 5; Def.'s Br. 2–4.  Plaintiff does not contend that its callus remover is among the items specifically listed in subheading 8214.20.30, HTSUS, the original classification by Customs.  Pl.'s Br. 15.  In any case, the listed items appear to be exclusive of any others, as the list is not followed by words such as "among others" or "and similar items."  See 8214.20.30, HTSUS.[7]  This does not mean that pedicure sets may not include additional items used in pedicures.

The court agrees with Plaintiff that pedicure sets and the instruments contained therein are not limited to collections of the items listed in subheading 8214.20.30, HTSUS.[8]  Subheading 8214.20.90, HTSUS, is a separate subheading of 8214.20 from subheading 8214.20.30 and is not limited thereby.  Additionally, Statutory Note 1 of Chapter 82 makes it clear that pedicure sets may contain items beyond those otherwise covered in the chapter.  It reads:

---

[6] See supra note 1.

[7] The court is not called upon to decide whether the requirements of the last two digits renders the HTSUS item in conflict with the International HTS.  The HTSUS governs the dispute.

[8] Defendant appears to agree with this proposition.  See Def.'s Br. 18–19.

> 1. Apart from blow torches and similar self-contained torches, portable forges, grinding wheels with frameworks, manicure or pedicure sets, and goods of heading 8209, this chapter covers only articles with a blade, working edge, working surface or other working part of:
>
>     (a)  Base metal;
>
>     (b)  Metal carbides or cermets;
>
>     (c)  Precious or semiprecious stones (natural, synthetic or reconstructed) on a support of base metal, metal carbide or cermet; or
>
>     (d)  Abrasive materials on a support of base metal, provided that the articles have cutting teeth, flutes, grooves or the like, of base metal, which retain their identity and function after the application of the abrasive.[9]

Note 1 to Section XV, HTSUS.

Here, the item at issue is either a pedicure set to be classified under subheading 8214.20.90, HTSUS, or it is some other article of cutlery to be classified under subheading 8214.90.90, HTSUS. The court rejects Plaintiff's alternative argument based on statutory Note 1 that if the merchandise is not a set, the emery board takes it out of Chapter 82. It makes no difference that the emery board is to be attached to a plastic rather than a metal back; the fact that the item at issue has a metal cutting apparatus satisfies statutory Note 1. See supra at 6–7.

Turning to the container issue, when the subheading following 8214.20.30 was amended to eliminate the requirement of a container, the International Trade Commission explained the problem as follows:

---

[9] The non-binding Explanatory Note to heading 8214 of the Harmonized System Committee of the World Trade Organization describes the sets as including the specifically listed items. Explanatory Note 2 to Ch. 82. The use of the term "includes" additionally supports the notion that items other than the separately listed instruments may be part of a pedicure set.

> Although the article description for subheading 8214.20 provides for manicure or pedicure sets, the existing language for the following 8-digit subheading restricts the scope to sets "in leather cases or other containers of types ordinarily sold therewith in retain sales." Customs has found the provision difficult to administer because of the uncertain meaning of "other containers" in this context. If the phrase is interpreted narrowly to mean only substantial containers similar to the named "leather cases," the nomenclature has no place for the sets named in the heading description. In practice, manicure and pedicure sets not imported in some container for retail sale would not be considered to be a set. The proposed change would make clear that sets, other than those in leather cases, are classified in 8214.20.90.

USITC Proposed Modification 6. The question raised by the Modification explanation is whether under the operable container requirement, the pedicure sets had to be encased in some kind of more or less permanent container in order to be classified as a set. After the statutory change, Customs was not required to assess the substantiality of the container. What it was required to do with regard to containers before the change is not particularly clear. The court, however, is dubious that, as Plaintiff belatedly asserts, the thin cardboard box packaging is a container of the type contemplated by the subheading.[10] Plaintiff also now argues that the outer egg is the requisite container, but it is actually the functional holder of the cutting and abrading instrument. It does not appear to be its container. The court, however, need not resolve the container issue. The PedEgg™, as imported, is not a pedicure set, and the requirements of the subheading cannot be met.

　　　　As indicated, it is clear to the court that the PedEgg™ with its emery pad accessories are a pedicure cutlery item and may be classified in subheading 8214.20.90, HTSUS,

---

[10] Clam shell packaging is usually destroyed upon opening and also would be considered disposable packaging not suitable for repetitive use and not separately classifiable. See GRI 5(b).

if it is a "set." Whether or not a permanent case was required in order to be classified under subheading 8214.20.90, HTSUS, at the time of importation, PedEgg™ is not a set within the common meaning of that term. These are the common meanings of the term "set" as provided by Plaintiff.

> The word "set" is defined as "a number of things of the same kind that belong or are used together." Merriam-Webster online dictionary available at www.merriam-webster.com (last accessed Feb. 28, 2012). Set is also defined as "a group of things of the same kind that belong together and are so used." American Heritage on-line dictionary available at www.ahdictionary.com (last accessed Mar. 1, 2012).

Pl.'s Br. 11.

The PedEgg™, however, is one instrument. The emery pad is intended to be affixed thereto. Pl.'s Facts ¶ 18; Def.'s Resp. Statement of Facts ¶ 18. It is an accessory which completes the functioning of the PedEgg™ as a callus removing instrument. In fact, physical inspection and manipulation of the emery pads reveals that they are thin and flexible and not well-suited for use except as affixed to the PedEgg™. Plaintiff now argues that because the emery pad is affixed to the outer bottom of the egg it is used separately. Observation of the product indicates that the egg must be closed and used as one piece in order for pressure to be applied comfortably to the emery pad. Thus, the emery pad by itself or as affixed to the egg is not a separate instrument. Because the PedEgg™ is a unitary cutlery item and not a set, it is to be classified under subheading 8214.90.90, HTSUS, the basket provision for other cutlery items and their parts.

## CONCLUSION

Plaintiff's complaint fails.  Defendant's classification of the PedEgg™ stands.

Judgment will be entered for Defendant with costs.

   /s/ Jane A. Restani   
Jane A. Restani
Judge

Dated this 6th day of September, 2012.
New York, New York.

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TELEBRANDS CORPORATION,**<br><br>        Plaintiff,<br><br>        v.<br><br>**UNITED STATES,**<br><br>        Defendant. | **Before: Jane A. Restani, Judge**<br><br>Court No. 11-00064 |

## **JUDGMENT**

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that Defendant United States' Cross-Motion for Summary Judgment is granted and Plaintiff Telebrands Corporation's Motion for Summary Judgment is denied. Customs' classification of the subject merchandise under subheading 8214.90.90, HTSUS, is sustained. Judgment is awarded to Defendant United States with costs.

Dated this 6th day of September, 2012.
New York, New York.

                                               /s/ Jane A. Restani
                                                 Jane A. Restani
                                                      Judge